NOTICE

Decision filed 08/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241001-U

NO. 5-24-1001

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| ROBERT DORMAN and DOUGLAS HULME | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | No. 21-CH-233 |
| | ) | |
| MADISON COUNTY, | ) | |
| an Illinois Municipal Corporation, | ) | Honorable |
| | ) | Sarah D. Smith, |
| Appellee-Defendant. | ) | Judge, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*:  The June 27, 2024, order dismissing the plaintiffs' complaint for improper claim splitting, and the August 27, 2024, order denying the plaintiffs' motion to reconsider are affirmed. Because that determination is dispositive, we do not address the plaintiffs' additional challenges to the circuit court's May 7, 2024, orders denying substitution and quashing subpoenas.

¶ 2    The plaintiffs, Robert Dorman and Douglas Hulme, appeal the June 27, 2024, order dismissing their complaint for improper claim splitting, the August 27, 2024, order denying their motion to reconsider, and challenge the circuit court's May 7, 2024, order denying their petition

---

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992). Justice Clarke was substituted on the panel and has listened to oral arguments and read the briefs.

1

to substitute all judges of the Third Judicial Circuit and quashing subpoenas related to said petition. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The plaintiffs were terminated by Madison County in April 2020 following Board meetings addressing their employment. At the time, a Madison County Public Corruption Task Force (Task Force)—initially convened in 2018 to investigate allegations of misconduct within county government—had conducted an investigation that included the plaintiffs, and the Illinois Attorney General later determined that the investigation did not support criminal charges. In their various lawsuits, including this one, the plaintiffs allege that their terminations were connected to the Task Force's activities and the dissemination of information arising from that investigation. The present action arises from those circumstances.

¶ 5                              A. Relevant Litigation History

¶ 6     On May 1, 2020, the plaintiffs filed their first action against Madison County in Madison County case No. 2020-CH-196. In that action, the plaintiffs sought administrative review of the County Board's decision and alleged that their terminations violated due process protections under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 2, of the Illinois Constitution. The circuit court dismissed the action with prejudice, and this court affirmed. *Dorman v. Madison County*, 2023 IL App (5th) 220320-U.

¶ 7     On June 8, 2020, the plaintiffs filed a second action against Madison County in Madison County case No. 2020-MR-575. That action alleged that Madison County violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2018)) by discussing the plaintiffs' terminations during executive sessions at the April 15 and 16, 2020, County Board meetings. The circuit court entered

2

summary judgment in favor of Madison County, and this court affirmed. *Dorman*, 2023 IL App (5th) 220320-U.

¶ 8    The plaintiffs have also filed several additional actions arising from their terminations and the events surrounding the County Board's April 2020 proceedings, including on August 6, 2021, when the plaintiffs filed Madison County case No. 2021-L-955 against Madison County and numerous other defendants. That complaint alleged, among other claims, civil conspiracy, tortious interference with employment, defamation, and civil-rights violations under 42 U.S.C. § 1983. The plaintiffs alleged that the defendants, including members of or individuals associated with the Madison County Public Corruption Task Force, participated in conduct that resulted in the plaintiffs' terminations. The action was removed to federal court and subsequently dismissed and refiled as case No. 21-LA-1119.

¶ 9                                    B. Present Action

¶ 10    On December 6, 2021, the plaintiffs filed the present action in the Madison County Circuit Court. The complaint asserted two constitutional claims arising from the County Board's April 16, 2020, resolution and the plaintiffs' subsequent terminations. Count I alleged that the resolution constituted an unlawful bill of attainder in violation of article I, section 10, of the United States Constitution. Count II alleged that restrictions imposed on the plaintiffs' communications with County employees following their terminations violated the free speech and assembly protections of article I, sections 4 and 5, of the Illinois Constitution.

¶ 11    Madison County moved to dismiss the complaint pursuant to sections 2-619 and 2-615 of the Code of Civil Procedure (735 ILCS 5/2-619; 2-615 (West 2020)), arguing, among other things, that the plaintiffs' claims were barred by improper claim splitting because the claims arose from

3

the same operative facts underlying the plaintiffs' prior lawsuits. The motion also raised additional grounds for dismissal.

¶ 12 While the motion to dismiss was pending, the case was reassigned to different judges several times. Judge Chapman was substituted as a matter of right. Judge Jumper was assigned and later recused, and the matter was reassigned to Judge Foster. On September 21, 2022, plaintiff Dorman moved to substitute Judge Foster and requested assignment of a judge from outside Madison County. The court granted the motion and reassigned the case to Judge Motil. On September 29, 2022, plaintiff Hulme moved to substitute Judge Motil and likewise requested assignment of a non-Madison County judge. The matter was subsequently assigned to Judge Sarah D. Smith, judge of the Circuit Court of Madison County, on January 19, 2023.

¶ 13 On March 2, 2023, the circuit court granted additional time to the parties to file response and reply briefs to the defendant's motion to dismiss. On July 24, 2023, the plaintiffs filed their response to the defendant's motion to dismiss. On July 25, 2023, the defendant filed its reply. On July 26, 2023, the plaintiffs filed a petition seeking substitution of all judges of the Third Judicial Circuit for cause pursuant to section 2-1001(a)(3) of the Code of Civil Procedure. 735 ILCS 5/2-1001(a)(3) (West 2022). The plaintiffs alleged that judges within the circuit had been exposed to information concerning the 2018 Madison County Public Corruption Task Force investigation, had participated in proceedings involving that investigation, or had personal or professional relationships with Madison County officials that allegedly created an appearance of impropriety or actual prejudice.

¶ 14 On September 28, 2023, Judge Smith ordered the plaintiffs' petition be assigned for hearing by an "out of county judge." Thereafter, Bond County Judge Christopher Bauer was assigned to hear the petition. The plaintiffs disputed Judge Bauer's assignment as he was a judge within the

4

Third Judicial Circuit. On February 6, 2024, the Illinois Supreme Court ordered a judge outside the Third Judicial Circuit to be assigned to hear the petition by supervisory order. Judge Ericka Sanders of the Fourth Judicial Circuit was subsequently assigned to hear the plaintiffs' petition to substitute all judges of the Third Judicial Circuit.

¶ 15 On May 7, 2024, Judge Sanders held a hearing on the petition to substitute all judges of the Third Judicial Circuit. The plaintiffs had attempted to subpoena several judges and law enforcement officers for evidence depositions, but Judge Sanders granted motions to quash the subpoenas and denied the plaintiffs' motion to continue the hearing. After considering the evidence and arguments, Judge Sanders denied the petition to substitute all judges, finding that the plaintiffs had not established the relevance or admissibility of the requested testimony and had not demonstrated actual prejudice by a preponderance of the evidence. The court further noted that Judge Smith had not been serving on the bench during the 2018 investigation and that only a portion of the circuit's judges had served during that period.

¶ 16 Following the May 7 ruling, the matter returned to Judge Smith. On June 27, 2024, the circuit court granted Madison County's section 2-619 motion and dismissed the plaintiffs' complaint with prejudice. The court concluded that Madison County had previously been named as a defendant in multiple actions arising from the same operative facts and that the plaintiffs had ample opportunity to raise their current claims in those proceedings.

¶ 17 The plaintiffs moved to reconsider. On August 27, 2024, the circuit court denied reconsideration. In its written order, the court reviewed the plaintiffs' prior lawsuits against Madison County and rejected the plaintiffs' contention that the present action represented their first constitutional challenge to the County. The court concluded that the plaintiffs' claims arose

5

from the same underlying events and were barred because they could have been asserted in earlier litigation. The plaintiffs filed a timely notice of appeal on September 18, 2024.

¶ 18                                  II. ANALYSIS

¶ 19     On appeal, the plaintiffs challenge three categories of rulings: (1) the May 7, 2024, orders denying their petition to substitute all judges of the Third Judicial Circuit for cause and quashing subpoenas directed to certain third circuit judges and investigators; (2) the June 27, 2024, order dismissing their complaint for improper claim splitting; and (3) the August 27, 2024, order denying their motion to reconsider.

¶ 20                                  A. Jurisdiction

¶ 21                          *June 27 and August 27 Orders*

¶ 22     The plaintiffs' notice of appeal only identifies "the judgment and order *** entered and filed on August 28, 2024" as the ruling from which they seek review. The record contains no order entered on August 28. Instead, the circuit court dismissed the complaint on June 27, 2024, and denied reconsideration on August 27, 2024.

¶ 23     The defendant argues that this misstatement renders the notice defective. The plaintiffs respond that the reference to "August 28" was a clerical error and that, when liberally construed, the notice reasonably signals an intent to appeal the August 27 order and the underlying June 27 dismissal.

¶ 24     Illinois Supreme Court Rule 303(b)(2) requires a notice of appeal to "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). This requirement is jurisdictional. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 175-76 (2011). Generally, a reviewing court has jurisdiction only over the judgments or parts of judgments specified in the notice of appeal. *Id.*

6

¶ 25    Nevertheless, Illinois courts liberally construe notices of appeal. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Under that principle, an unspecified order may be reviewed when it was a "step in the procedural progression leading" to the judgment identified in the notice of appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 436 (1979); *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23.

¶ 26    When reasonably read, this notice alerted the defendant that the plaintiffs sought review of the August 27 denial of reconsideration, and, by necessary implication, the June 27 dismissal that formed the basis of that ruling. Accordingly, we conclude that jurisdiction exists to review the June 27 and August 27 orders despite the incorrect "August 28" date.

¶ 27                                  *May 7 Orders*

¶ 28    Separate from the date error, the notice of appeal contains no reference to the May 7, 2024, orders denying substitution and quashing subpoenas. The defendant argues that this omission precludes appellate review of those rulings. The plaintiffs respond that the May 7 orders merge into the final judgment under the liberal-construction rule and therefore fall within the scope of appellate jurisdiction.

¶ 29    *O'Brien* specifically involved appellate review of an order denying substitution for cause where the notice of appeal did not identify that order. The supreme court held that an unspecified substitution ruling is reviewable when it was a "step in the procedural progression leading to the final judgment specified in the notice of appeal." (Internal quotation marks omitted.) *Id.* ¶ 23. The May 7 substitution ruling here preceded the June 27 dismissal and formed a part of the procedural sequence culminating in the final judgment identified in the plaintiffs' notice. Under *O'Brien*, we conclude that the May 7 substitution ruling falls within the scope of our jurisdiction.

7

¶ 30　　However, as explained below, we need not resolve the plaintiffs' challenges to the May 7 rulings—whether concerning substitution or quashing of subpoenas. Even assuming the plaintiffs could establish error, resolution of those issues would not affect the disposition of this appeal because the June 27 dismissal rests on an independent legal ground reviewed *de novo* and unaffected by any alleged procedural error on May 7, regardless of whether those rulings are otherwise reviewable.

¶ 31　　　　　　　　　　　　　B. Review of the May 7 Orders

¶ 32　　The plaintiffs contend that the denial of their petition for substitution requires reversal because the judge who entered the subsequent orders allegedly lacked authority to proceed. They further argue that the court's contemporaneous decision to quash subpoenas deprived them of evidence necessary to prove judicial prejudice. According to the plaintiffs, these alleged errors render all subsequent orders null and void. See *Palos Community Hospital v. Humana Insurance Co.*, 2021 IL 126008, ¶ 34 (recognizing that orders entered after an erroneous denial of substitution are subject to vacatur). Illinois courts, however, do not decide questions unnecessary to the resolution of an appeal. See *Goral v. Dart*, 2020 IL 125085, ¶ 76 ("reviewing courts ordinarily will not consider issues that are not critical to the disposition of the case presented or where the result will not be affected regardless of how the issues are decided."). Applying that principle, we need not determine whether the circuit court erred in denying substitution or quashing the subpoenas because, even assuming the plaintiffs are correct, those alleged errors would not alter the disposition of this appeal.

¶ 33　　If the plaintiffs were to prevail on their May 7 challenges, the consequence would be vacatur of the subsequent orders and remand for further proceedings before a properly assigned judge. See *Palos Community Hospital*, ¶ 34. That consequence, however, would not resolve the

dispositive legal issue presented here. On remand, a properly assigned judge would still be required to determine whether the complaint survives the defendant's claim splitting defense. Because the applicability of claim splitting presents a question of law that we review *de novo*, the plaintiffs cannot obtain a different ultimate disposition merely by prevailing on their challenges to the May 7 orders.

¶ 34    Accordingly, although the May 7 substitution ruling is properly before us, we need not address the merits of the plaintiffs' challenges to the May 7 orders—whether concerning substitution or subpoenas—because resolution of those issues would not affect the disposition of this appeal. We therefore turn to the propriety of the June 27 dismissal.

¶ 35                                    C. Rule 341(h)(7)

¶ 36    We next address the defendant's argument that the plaintiffs' opening brief violates Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), because it contains factual assertions unsupported by record citations and presents conclusory arguments lacking adequate authority. The defendant relies on *Smith v. Walgreen Co.*, 2024 IL App (5th) 240394, ¶ 15, in which this court reiterated that parties must support their arguments with appropriate citations to the record and legal authority.

¶ 37    To the extent the plaintiffs' arguments concern the May 7 orders, we need not address the defendant's forfeiture argument because we decline to reach the merits of those issues. For the only issue necessary to resolve this appeal—the June 27 dismissal based on claim splitting—the plaintiffs' briefing is sufficient to permit review. We therefore decline to find forfeiture under Rule 341(h)(7).

¶ 38                              D. Claim splitting

¶ 39    We next consider the circuit court's June 27, 2024, order dismissing the plaintiffs'

complaint pursuant to section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619 (West

2022). "A motion to dismiss under section 2-619 admits the legal sufficiency of the plaintiff's

complaint, but asserts that the claim asserted against the defendant is barred by some affirmative

matter which avoids the legal effect of or defeats the claim." *In re Estate of Boyar*, 2013 IL 113655,

¶ 27. "When reviewing a judgment dismissing a claim under the statute, we afford no deference to

the determinations by the lower courts." *Id.* A section 2-619 dismissal presents a question of law

that is reviewed *de novo*. *Id.*

¶ 40    The sole issue is whether the plaintiffs' complaint is barred by the rule against claim

splitting. Illinois recognizes claim splitting as a component of the doctrine of *res judicata*. *Lavite*

*v. Dunstan*, 2019 IL App (5th) 170114, ¶ 40 ("Claim splitting, a form of *res judicata*, precludes a

party from bringing a duplicative lawsuit arising from the same transaction or events underlying a

previous suit by simply changing the legal theory."). Where a cause of action is in its nature entire

and indivisible, a plaintiff cannot divide it in order to maintain separate lawsuits but instead must

assert all grounds of recovery arising from that cause of action in a single lawsuit. *Green v.*

*Northwest Community Hospital*, 401 Ill. App. 3d 152, 154 (2010). Likewise, a plaintiff may not

preserve the right to bring a second action after losing the first by limiting the theories of recovery

asserted in the initial lawsuit. *Id.*

¶ 41    Illinois applies the transactional test to determine whether successive suits involve the same

cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under that

test, the inquiry is not whether the legal theories or requested reliefs differ but whether the actions

arise from a single group of operative facts. *Id.* Thus, a cause of action is defined by the facts

giving rise to the right to relief, not by the legal theories advanced. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 10. Although one group of operative facts may support multiple theories of recovery, there remains only one cause of action. *Id.* Consequently, *res judicata* bars not only matters actually decided, but also matters that could have been raised in the earlier action. *Id.* ¶ 9.

¶ 42 The record establishes that the present complaint is the fourth lawsuit the plaintiffs have filed against Madison County arising out of the same series of connected transactions. The plaintiffs previously filed Madison County case No. 2020-CH-196 challenging their terminations through an action for administrative review and alleging violations of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 2, of the Illinois Constitution. The circuit court dismissed this action with prejudice on April 26, 2022, and the appellate court affirmed. They subsequently filed Madison County case No. 2020-MR-575 alleging violations of the Open Meetings Act arising from the same April 15 and 16, 2020, board meetings. The circuit court granted summary judgment to Madison County in that action on April 26, 2022, and the appellate court affirmed. The plaintiffs later filed Madison County case No. 2021-L-955 asserting tort claims and civil rights claims under 42 U.S.C. § 1983 against Madison County and numerous other defendants based upon the same underlying events. Lastly, the present action again names Madison County as a defendant and challenges the same course of conduct.

¶ 43 The plaintiffs argue that claim splitting does not apply because this complaint alleges different constitutional violations, including a bill of attainder claim and claims under the Illinois Constitution's free speech and assembly provisions. They contend that those claims require proof of legal elements different from those involved in the earlier litigation.

¶ 44 We disagree. The plaintiffs' argument focuses upon the legal theories asserted rather than the operative facts giving rise to those theories. Although the constitutional claims asserted in this

11

action contain elements different from the plaintiffs' prior administrative, statutory, and tort claims, Illinois law does not define a cause of action by its legal elements. *Wilson*, 2012 IL 112898, ¶ 10. Rather, the dispositive inquiry is whether the present claims arise from the same group of operative facts. *River Park*, 184 Ill. 2d at 311.

¶ 45    Here, every complaint filed against Madison County arises from the same nucleus of operative facts: the Madison County Board meetings of April 15 and 16, 2020; the plaintiffs' terminations from county employment; the alleged conduct of county officials and the Madison County Public Corruption Task Force surrounding that termination; and the constitutional, reputational, and economic injuries the plaintiffs contend resulted from those events. Although the plaintiffs now invoke additional constitutional provisions, those claims depend upon the same factual allegations underlying their earlier litigation against Madison County.

¶ 46    The plaintiffs likewise rely upon section 49 of the Restatement (Second) of Judgments, which provides that a judgment involving one obligor generally does not bar claims against another obligor. Restatement (Second) of Judgments § 49 (1982). That principle has no application here because Madison County was a defendant in each of the plaintiffs' successive lawsuits. This case instead is governed by Illinois's transactional approach to claim preclusion articulated in *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996), under which all theories of recovery arising from the same operative facts must be asserted in a single action. See *id.* at 338-40 ("The rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action.").

¶ 47    The record also refutes the plaintiffs' contention that this action represents their first constitutional challenge to Madison County. Their complaint in Madison County case No. 2020-CH-196 expressly alleged due process violations under the Fifth and Fourteenth Amendments to

12

the United States Constitution and article I, section 2, of the Illinois Constitution arising from the same terminations. The plaintiffs therefore had prior opportunities to litigate constitutional claims arising from the same transaction. See *Wilson*, ¶ 9 (*res judicata* bars claims that were or could have been raised in the prior action).

¶ 48   The circuit court correctly concluded that the plaintiffs attempted to conduct "piecemeal litigation" arising from a single, indivisible controversy. The fact that the plaintiffs now advance additional constitutional theories does not transform the underlying controversy into a new cause of action. As Illinois courts have consistently recognized, a plaintiff may not divide a single cause of action into successive lawsuits by changing legal theories or requesting different forms of relief. *Green*, 401 Ill. App. 3d at 154; *Rein*, 172 Ill. 2d at 340. Because the present complaint arises from the same operative facts as the plaintiffs' prior actions against Madison County, the circuit court properly dismissed the complaint pursuant to section 2-619 of the Code of Civil Procedure. Accordingly, we affirm the judgment of the circuit court.

¶ 49                                    III. CONCLUSION

¶ 50   For the foregoing reasons, we conclude that the plaintiffs' challenges to the May 7 orders do not require resolution because, even assuming error, those rulings would not alter the result of this appeal. The circuit court properly dismissed the plaintiffs' complaint under section 2-619 based on the rule against claim splitting. The present action arises from the same operative facts as the plaintiffs' prior actions against Madison County, and the plaintiffs cannot maintain a successive action by recasting previously available claims under new legal theories. Accordingly, we affirm the judgment of the circuit court.

¶ 51   Affirmed.

13